UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

In re:

GOLD STRIKE HEIGHTS
HOMEOWNERS ASSOCIATION,

Appellee.

No.  2:18-cv-00973-JAM

**ORDER AFFIRMING BANKRUPTCY
COURT'S JUDGMENT**

## I.   INTRODUCTION

Appellant Indian Village Estates, LLC ("Indian Village")
filed a complaint in Calaveras County Superior Court against Gold
Strike Heights Association, Gold Strike Heights Homeowners
Association, and Community Assessment Recovery Services ("CARS"),
alleging causes of action related to nonjudicial foreclosure in
March 2015.  Chapter 7 Trustee Gary Farrar ("Trustee") removed
the case to the bankruptcy court following Gold Strike Heights
Homeowners Association's filing of a Chapter 7 Bankruptcy
Petition.  The bankruptcy court found in favor of Trustee on all
claims.  Indian Village appeals the ruling to this Court.  For
the reasons set forth below, the judgment of the bankruptcy court
is affirmed.[1]

---

[1] This appeal was determined to be suitable for decision without

1

**II.   BACKGROUND**

**A. Background Facts and Allegations in Indian Village's Complaint**

In 2004, Indian Village, LLC purchased 31 of 49 lots in the Gold Strike Heights Subdivision, a small residential subdivision in Calaveras County owned by Westwind Development, Inc. Appellant Appendix ("AA") 414, ECF No. 16.  Indian Village placed a manufactured home on one lot and left the other thirty undeveloped.  AA 6.

In 2002, prior to the sale of any lots, the principal of Westwind Development, Frank Meagher, incorporated a homeowners association ("HOA") as a non-profit mutual benefit corporation for the subdivision.  AA 100, 393.  The HOA was named "Gold Strike Heights Association" ("Gold Strike 2002").  AA 393. Meagher was the sole board member of Gold Strike 2002 until Mark Weiner ("Weiner"), principal of Indian Village, and Don Lee ("Lee") were added to the board as a condition of Indian Village's lot acquisition.  AA 393, 414.

Around 2007, Weiner and Lee determined that Gold Strike 2002 had been suspended by the state for failing to file required forms with the Secretary of State and failure to pay required annual fees to the Franchise Tax Board.  AA 414-16.  Lee incorporated a new HOA, "Gold Strike Heights Homeowners Association" ("Gold Strike 2007").  AA 415.  From that point forward, Gold Strike 2007 was the operative HOA for the subdivision.  AA 417.  Lee amended the subdivision's Covenants,

oral argument.  E.D. Cal. L.R. 230(g).

Conditions & Restrictions (CC&Rs) to reflect the change.  AA 416.

The Amendment provided that "the new corporation formed in May of 2007 identified as the GOLD STRIKE HEIGHTS HOMEOWNERS ASSOCIATION is the full successor in interest to the old corporation identified as the GOLD STRIKE HEIGHTS ASSOCIATION formed in March of 2002 by WESTWIND DEVELOPMENT, INC.," and amended Article 1, Section 1.3, page 2 of the CC&Rs to define the "Association" as "GOLD STRIKE HEIGHTS HOMEOWNERS ASSOCIATION" instead of "GOLD STRIKE HEIGHTS ASSOCIATION."  AA 144-45.  The parties used the names "Gold Strike Heights Association" and "Gold Strike Heights Homeowners Association" interchangeably.  AA 440.

For three years, Weiner controlled the HOA through his majority ownership in the subdivision as the sole member of Indian Village.  AA 7.  In 2010, however, HOA members elected a board of directors comprised of only individuals who lived within the subdivision, ousting Weiner and Lee.  AA 7.  Indian Village sought to overturn the election through lawsuits, and residents countered with their own suits against Indian Village, Weiner, and Lee for violations of California elder abuse laws.  AA 8. The parties mediated their disputes in 2011 and came to an agreement: local residents would be the only board members of the HOA for three years in return for Indian Village receiving a reduction in its monthly assessments.  AA 450.

The next year, Indian Village refused to continue paying its discounted monthly assessments because it disapproved of the HOA's management.  AA 450.  In March 2013, CARS, on behalf the HOA, recorded a Notice of Delinquent Assessment against each of Indian Village's 31 lots in the name of Gold Strike 2002.  AA 21-

3

1  24.  CARS held a nonjudicial foreclosure sale in September 2014,

2  in which the HOA bid its claims for delinquent assessments

3  against each lot, again in the name of Gold Strike 2002.  AA 28-

4  33.  CARS recorded the 31 Trustee's Deeds Upon Sale with the

5  Calaveras County Recorder's Office.  AA 32-33.  The recorded

6  deeds state that the lots were conveyed to Gold Strike 2007.  Id.

7  In March 2015, Indian Village and Lee filed lawsuits in

8  Calaveras County Superior Court related to the foreclosure.  AA

9  3-18.  Indian Village's Complaint alleged causes of action

10  related to the nonjudicial foreclosure, including: (1) for

11  declaratory relief; (2) to set aside the trustee's sale; (3) to

12  cancel trustee's deeds; (4) for wrongful foreclosure; (5) for

13  quiet title; and (6) for slander of title.  Id.  In August of

14  that year, Gold Strike 2007 filed a Chapter 7 Bankruptcy

15  Petition.  AA 162.  The Trustee removed both state court cases to

16  the bankruptcy court.  AA 393.

17  In Lee's case, the bankruptcy court granted the Trustee's

18  motion for judgment on the pleadings, which the Ninth Circuit

19  Bankruptcy Appellate Court affirmed.  See In re Gold Strike

20  Heights Homeowners Ass'n, No. AP 15-09062-E, 2018 WL 3405473

21  (B.A.P. 9th Cir. July 12, 2018).  In Indian Village's case,

22  following two motions for summary judgment and trial, the

23  bankruptcy court found in favor of Trustee and quieted title to

24  the 31 lots in favor of Gold Strike 2007 and its successor

25  bankruptcy estate.  AA 454-62.  The matter before this Court

26  concerns Indian Village's appeal of that ruling.

27  ///

28  ///

III.    JURISDICTION AND STANDARD OF REVIEW

The Court hears this appeal pursuant to 28 U.S.C. § 158(a). District courts and circuit courts share the same role in the bankruptcy appellate process. <u>Gladstone v. U.S. Bancorp</u>, 811 F.3d 1133, 1138 (9th Cir. 2016) (citing <u>Microsoft Corp. v. DAK Indus., Inc. (In re DAK Indus., Inc.)</u>, 66 F.3d 1091, 1094 (9th Cir. 1995)).  Both review the bankruptcy court decision directly, evaluating whether the findings of fact contain clear error and assessing the conclusions of law de novo.  <u>Id.</u>

### IV.    DISCUSSION

**A.    The Bankruptcy Court's Factual Determinations Were Not Clearly Erroneous**

*"What's in a name? That which we call a rose by any other name would smell as sweet."*

–WILLIAM SHAKESPEARE, ROMEO AND JULIET act 2, sc. 2.

While this HOA dispute bears little resemblance to a Shakespearean tragedy, both feuds boil down to a name. Specifically, Indian Village challenges the nonjudicial foreclosure of its lots, arguing that use of an incorrect HOA name on foreclosure notices rendered the foreclosure invalid.

Indian Village argues that the bankruptcy court committed error by evaluating the credibility of witnesses, stating that credibility determinations were not relevant.  Appellant Br., ECF No. 6, pp. 39–41.  The Court disagrees.  The bankruptcy court evaluated the credibility, knowledge, and intent of the parties because so much of the case was "factually driven."  AA 395.  The bankruptcy court's credibility determinations were essential to determining who the parties understood was foreclosing on the

property, whether Indian Village received sufficient notice of foreclosure, and whether Indian Village suffered any prejudice on account of the missing word in the HOA's name.  Indian Village has not pointed to any specific examples of factual error, other than its disagreement that credibility was an issue in the case. See Appellant Br. at 39-41.

The bankruptcy court's findings of fact detailed how CARS, on behalf of the HOA, initiated a nonjudicial foreclosure in the name of Gold Strike 2002 after Indian Village withheld its discounted assessments from Gold Strike 2007.  AA 392-445.  These findings concluded that Indian Village knew that Gold Strike 2007 was the foreclosing entity.  AA 416.  Indian Village's principal, Weiner, directed Lee, Indian Village's legal and business service provider, to create Gold Strike 2007.  AA 394.  It was Lee and Weiner that chose to create Gold Strike 2007 with a name that was nearly identical to Gold Strike 2002.  AA 408-09.  The two HOAs' names differ only by the addition of the word "Homeowners" in the successor HOA.  Id.  As the bankruptcy court noted, parties continuously referred to Gold Strike 2007 by Gold Strike 2002's name, even though Gold Strike 2002 ceased any operations in 2007. AA 440.

There was no confusion that Indian Village was obligated to pay HOA fees, both as a condition of the lots' purchase, AA 120, and as a condition of the 2011 settlement, AA 450.  Similarly, there was no confusion that by refusing to pay its HOA fees, Indian Village owed money to Gold Strike 2007.  AA 440.  When Indian Village received letters from CARS attempting to collect on behalf of Gold Strike 2002, Indian Village knew to which

entity it owed money. AA 431. Both Lee and Weiner remained on Gold Strike 2002's board and knew that Gold Strike 2002 ceased operations in 2007. AA 435. As the bankruptcy court points out, there was no genuine confusion about which HOA was conducting the foreclosure. AA 408. Rather, Indian Village sought to take advantage of a problem of its own creation: the similarity of Gold Strike 2002's and Gold Strike 2007's names and the tendency of individuals to continue using the former's name. See AA 418.

As an appellate court, this Court may not "disturb the 'quintessentially factual determination' of credibility 'in the absence of clear error.'" In re Ashley, 903 F.2d 599, 606 (9th Cir. 1990) (quoting United States v. Lummi Indian Tribe, 841 F.2d 317, 319 (9th Cir. 1988)). The Court finds that there is no clear error in the bankruptcy court's credibility determination. Similarly, the Court finds no clear error in the bankruptcy court's factual determination that CARS was acting on behalf of Gold Strike 2007 at all times and the reference to Gold Strike 2002 in documents was a typographical error. The Court affirms the bankruptcy court's findings of fact.

**B.    The Bankruptcy Court's Legal Determinations Were Correct**

There is a presumption that a nonjudicial foreclosure sale was conducted regularly and fairly. Melendrez v. D & I Inv., Inc., 26 Cal. Rptr. 3d 413, 430 (Ct. App. 2005). "This presumption may only be rebutted by substantial evidence of prejudicial procedural irregularity." Id. The party challenging the trustee's sale bears the burden of proving such irregularity to overcome the presumption of regularity. Id.

Indian Village relies on <u>Yvanova v. New Century Mortg.</u> <u>Corp.</u>, 365 P.3d 845 (Cal. 2016) for the proposition that any defect in the foreclosure process voids the foreclosure. The Court does not read <u>Yvanova</u> quite so broadly. The California Supreme Court narrowly tailed its ruling in that case, holding "only that a borrower who has suffered a nonjudicial foreclosure does not lack standing to sue for wrongful foreclosure based on an allegedly void assignment merely because he or she was in default on the loan and was not a party to the challenged assignment." <u>Yvanova</u>, 365 P.3d at 848. The bankruptcy court properly applied <u>Yvanova</u> in finding that Indian Village had standing to challenge the foreclosure; however, Indian Village failed to prevail on its foreclosure challenge at trial.

"To successfully challenge a foreclosure sale based on a procedural irregularity, the plaintiff must show both that there was a failure to comply with the procedural requirements for the foreclosure sale <u>and</u> that the irregularity prejudiced the plaintiff." <u>Citrus El Dorado, LLC v. Chicago Title Co.</u>, 244 Cal. Rptr. 3d 372, 378 (Ct. App. 2019) (holding that mere technical violations of the foreclosure process, which did not prejudice the landowner, did not give rise to a wrongful foreclosure claim). Minor, nonprejudicial defects that would not confuse a reasonable person are not actionable. See, e.g., <u>Gillies v.</u> <u>JPMorgan Chase Bank, N.A.</u>, 213 Cal. Rptr. 3d 210, 215 (Ct. App. 2017) (rejecting a claim based on the misspelling of the borrower's name on the notices of the trustee's sale).

///

///

8

## 1. CARS Complied with California's Procedural Requirements

The Davis-Stirling Common Interest Development Act, Cal. Civ. Code § 4000 et seq., governs common interest developments in California and provides statutory requirements for nonjudicial foreclosures by HOAs. See also Cal. Civ. Code § 1350 et seq. (repealed effective Jan. 1, 2014). In March 2013, Section 1367.1 listed six provisions that an HOA must include when notifying an owner about delinquent assessments. Cal. Civ. Code § 1367.1(a)(1)-(6). Review of the record shows that the Notice of Delinquent Assessment, dated March 5, 2013, complied with those requirements. ECF No. 6-4, pp. 3-6. Although Indian Village relies on Diamond v. Superior Court, 159 Cal. Rptr. 3d 110 (Ct. App. 2013), Indian Village has not shown a violation of the statutory requirements, as seen in the judicial foreclosure in Diamond. See id. at 121-22 (mailing of notice of default 28 days after recording was insufficient compliance where the statute required mailing within 10 days).

"Any sale by the trustee shall be conducted in accordance with Sections 2924, 2924b, and 2924c applicable to the exercise of powers of sale in mortgages and deeds of trust." Cal. Civ. Code § 1367.1(g). Section 2924 requires that a notice of default include all of the following:

> (A) A statement identifying the mortgage or deed of trust by stating the name or names of the trustor or trustors and giving the book and page, or instrument number, if applicable, where the mortgage or deed of trust is recorded or a description of the mortgaged or trust property.
> (B) A statement that a breach of the obligation for which the mortgage or transfer in trust is security has occurred.

(C) A statement setting forth the nature of each
     breach actually known to the beneficiary and of his
     or her election to sell or cause to be sold the
     property to satisfy that obligation and any other
     obligation secured by the deed of trust or mortgage
     that is in default.
(D) If the default is curable pursuant to Section
     2924c, the statement specified in paragraph (1) of
     subdivision (b) of Section 2924c.

Cal. Civ. Code § 2924(a)(1). Review of the record indicates that

the Notice of Default, dated October 22, 2013, satisfied all of

the requirements of California Civil Code Section 2924. ECF No.

6-1, pp. 25-27. While the statute required the name of the

trustor, CARS, it did not require the name of the beneficiary,

Gold Strike 2007. A typographical error in the name of the

beneficiary does not impact compliance with this section.

"A nonjudicial foreclosure by an association to collect upon

a debt for delinquent assessments shall be subject to a right of

redemption." Cal. Civ. Code § 5715(b). "In addition to the

requirements of Section 2924f, a notice of sale in connection

with an association's foreclosure of a separate interest in a

common interest development shall include a statement that the

property is being sold subject to the right of redemption" within

ninety (90) days. Id. California Civil Code Section 2924f

requires that the notice of sale "contain the name, street

address in this state, which may reflect an agent of the trustee,

and either a toll-free telephone number or telephone number in

this state of the trustee, and the name of the original trustor,"

and a statement that the property will be sold at public sale

unless the default is cured. Cal. Civ. Code § 2924f(b)(5),

(c)(3). All of this information was provided in the Notice of

Trustee's Sale and the Certificate of Foreclosure Sale, following the September 30, 2014 public auction.  ECF No. 6-1, pp. 28-31.

Section 2924f goes on to state that "[i]f a legal description or a county assessor's parcel number and either a street address or another common designation of the property is given, the validity of the notice and the validity of the sale shall not be affected by the fact that the street address, other common designation, name and address of the beneficiary, or the directions obtained therefrom are erroneous or that the street address, other common designation, name and address of the beneficiary, or directions obtained therefrom are omitted."  Cal. Civ. Code § 2924f(b)(5).  Accordingly, as the name of the beneficiary need not be included, a typographical error in the beneficiary's name has no impact on the notice's compliance with statute.

### 2. Indian Village Did Not Suffer Prejudice

Even if the Court had found that CARS failed to comply with California statutory requirements, Indian Village's failure to show prejudice would doom its challenge to the foreclosure.  See Citrus El Dorado, 244 Cal. Rptr. 3d at 378.  Much like in Gillies, the typographical error here is not material such that a reasonable person would be confused.  213 Cal. Rptr. 3d at 215 (dismissing claim based on a misspelling of the borrower's name as "Dougles" instead of "Douglas" in the notice of default).  The HOA's name, which was not required to be listed on the notice of default, contained a missing word.  A reasonable person would not have been confused as to who was seeking foreclosure, and indeed, there was no genuine confusion on this issue.  Indian Village has

11

failed to show prejudice.

### 3. The Bankruptcy Court Properly Found for The Trustee on All Claims

The Court now reviews specifically the bankruptcy court's adjudication of the six claims in Indian Village's Complaint. Review of the evidence and applicable law illustrates that Gold Strike 2007 had the right to foreclose and that CARS carried out the foreclosure in compliance with state law. The typographical error did not prejudice Indian Village.

On Indian Village's first claim, the bankruptcy court properly granted declaratory judgment to Appellants because Gold Strike 2007 had the right to foreclose and exercised that right, consistent with state law. That right was not lost because there was a typographical error in the notice of delinquent assessment, notice of default, and notice of sale. AA 440-41, 455.

As to Indian Village's second and third claims to set aside the Trustee's sale and cancel the Trustee's deed, the bankruptcy court found that Indian Village failed to show that the foreclosure sales were not conducted in compliance with state law. AA 441-42, 455. The Court agrees that this determination was correct, as the evidence has shown CARS complied with California statutory provisions.

The Court also agrees that Indian Village's fourth claim for wrongful foreclosure was correctly denied because CARS conducted the nonjudicial foreclosure sales for the properties in accordance with state law. AA 442, 455-56. This finding also supports denying Indian Village's sixth claim for slander of title. Id.

1     Finally, the Court affirms the bankruptcy court's judgment
2  as to Indian Village's fifth claim to quiet title.  The
3  bankruptcy court heard evidence and then accurately described the
4  parties' legal interests in the property.  AA 441, 455-62.  It
5  found that Gold Strike 2007 was the rightful owner of the
6  property.  Id.  In declaring the rights of the parties, the
7  bankruptcy court resolved the dispute about the use of Gold
8  Strike 2002's name on certain documents, finding that this minor
9  defect did not impair Gold Strike 2007's title.  Id.
10     Indian Village's arguments about a break in the chain of
11  title are unpersuasive.  The foreclosure did not violate the
12  chain of title because the foreclosing entity never changed—it
13  was always Gold Strike 2007.  Gold Strike 2007 had the right to
14  foreclose after Indian Village intentionally violated the 2011
15  settlement by withholding its discounted assessments.  Gold
16  Strike 2007 chose to exercise that right in seeking foreclosure.
17  Indian Village cannot rely on an immaterial typo to avoid the
18  consequences of its actions.

19                **V.  CONCLUSION AND ORDER**

20     For the foregoing reasons, we determined that Appellant
21  failed to demonstrate that the foreclosure violated applicable
22  California law and was improper.  Consequently, judgment was
23  properly granted to Appellees on all six of Appellant's claims.
24  Accordingly, the Court AFFIRMS the bankruptcy court's Judgment.
25     IT IS SO ORDERED.
26  Dated: April 30, 2019

27
28                                      _____
                                        JOHN A. MENDEZ,
                                        UNITED STATES DISTRICT JUDGE

13